| | | |
|---|---|---|
| Michael Jacobs | * | IN THE |
| 5 Arthur Drive East | | |
| Fort Washington, MD 20744 | * | UNITED STATES DISTRICT |
| | | |
| Plaintiff, | * | COURT FOR THE |
| | | |
| v. | * | DISTRICT OF COLUMBIA |
| | | |
| James N. Mattis, Secretary | * | |
| U.S. Department of Defense | | |
| (Defense Intelligence Agency) | * | |
| Washington, DC 20301 | | |
| | * | |
| Serve on: | | |
| | * | |
| United States Attorney's Office | | |
| Civil Process Clerk | * | |
| 555 4th Street, NW | | |
| Washington, DC 20530 | * | Case No.: |
| | | |
| AND | * | |
| | | |
| United States Attorney General | * | |
| U.S. Department of Justice | | |
| 950 Pennsylvania Avenue, NW | * | |
| Washington, DC 20530-0001 | | |
| | * | |
| AND | | |
| | * | |
| Defense Intelligence Agency | | |
| 7400 Pentagon | * | |
| Attn.: EO, Mr. Patrick Steury | | |
| Washington, DC 20201 | * | |
| | | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## **COMPLAINT**

Michael Jacobs, by and through his attorneys, Paul V. Bennett, Esq. and Bennett and Ellison, P.C., hereby sues James N. Mattis, Secretary, Department of Defense (hereinafter "DoD") and states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII").

2.      That the Defense Intelligence Agency (hereinafter "DoD, DIA" or "the Agency"), a

Defendant-agency, is headquartered in Washington, D.C.

3.      That the employment records relevant to the unlawful employment practices

complained of herein are maintained and administered by the Agency's headquarters

in Washington, D.C. Therefore, pursuant to 42 U.S.C. § 2000e-5, this Honorable

Court constitutes the proper venue and thereby has jurisdiction to hear Plaintiff's

claims.

4.      That at all times relevant hereto, Defendant is a federal government agency

employing fifteen (15) or more persons, and is an "employer" within the meaning of

Title VII.

5.      That on February 20, 2018, Plaintiff filed a formal complaint of discrimination with

Defendant's Equal Opportunity & Diversity Office ("EO").

6.      That on April 11, 2018, Plaintiff received the Agency's Notice of Dismissal

pertaining to Plaintiff's formal complaint of discrimination.

7.      In accordance with Title VII and the Code of Federal Regulations (CFR), Plaintiff has

properly exhausted his administrative remedies before timely filing suit.

## FACTS COMMON TO ALL COUNTS

8.      Plaintiff's race is African-American. Defendant was aware at all times herein of

Plaintiff's race.

9.      Plaintiff was hired by DoD, DIA, on or about January 9, 2017, as a Police

        Officer/Patrol Officer, Grade 7.

10.     In or about May of 2017, Plaintiff was promoted to Police Officer/Patrol Officer,

        Grade 8. Plaintiff served in this position until approximately December 7, 2017.

11.     As of December 7, 2017, Plaintiff's annual salary was approximately fifty-five

        thousand dollars ($55,000.00).

12.     Plaintiff's job duties as a Police Officer/Patrol Officer included, but were not limited

        to, providing security to the Defendant-premises, writing incident reports, and

        assisting individuals in distress.

13.     At all times relevant hereto, Sergeant Andrew Lasick (Caucasian) acted as Plaintiff's

        immediate supervisor, and Lieutenant David Fuller (Caucasian) acted as Plaintiff's

        second-level supervisor.

14.     On or about May 13, 2017, while Plaintiff was off-duty, Plaintiff attended a "National

        Police Week" event in Washington D.C. During this event, Plaintiff wore his work

        badge.

15.     Approximately one (1) week later, Captain Brandon Young (Caucasian) questioned

        Plaintiff about the above-described event. Plaintiff stated that he and other Police

        Officers employed by Agency wore their work badges during the "National Police

        Week" event. Mr. Young assured Plaintiff that his job was not at risk for wearing his

        work badge to the event.

16.     On or about November 15, 2017, Brent Shull (Caucasian), employed by the Agency

        as a Police Officer, changed a tire for an employee thereby resulting in his (Mr.

Shull's) hands getting dirty, and subsequently stated to Plaintiff, "Now I'm as dark as you." Plaintiff found the comment to be extremely offensive.

17.     Shortly thereafter, Plaintiff submitted a written statement to Mr. Lasick, identifying therein the above-quoted statement and thereby objecting to a hostile work environment.

18.     On or about November 29, 2017, Mr. Shull admitted to stating to Plaintiff, "Now I'm as dark as you." Mr. Lasick and Mr. Fuller witnessed said admission.

19.     However, Mr. Shull explained that he did not believe he said anything wrong, adding, "I joke like that, you can ask my other black friends." Mr. Fuller and Mr. Lasick witnessed Mr. Shull's comment. Plaintiff found Mr. Shull's reference to "other black friends" also to be extremely offensive.

20.     On or about December 7, 2017, Plaintiff was terminated from employment for allegedly engaging in misconduct (inappropriate use of work badge) during the "National Police Week" event on or about May 13, 2017, *supra*. Prior to his termination from employment, Plaintiff had not been subjected to any corrective action for allegedly committing misconduct on or about May 13, 2017.

21.     Rather than addressing Plaintiff's opposition to unlawful employment practices, and in retaliation for Plaintiff's engaging in protected eeo activities, Defendant terminated Plaintiff from employment.

22.     Plaintiff's co-workers including, without limitation, Kara Arbogast (Caucasian), Police Officer/Patrol Officer, were treated more favorably than Plaintiff under similar circumstances, as they engaged in misconduct by, among other things, showing their

work badge while off duty during the "National Police Week" event on or about May

13, 2017, but unlike Plaintiff, were not consequently terminated from employment.

23.   On or about December 27, 2017, Plaintiff initiated contact with Defendant's Equal

Opportunity & Diversity Office ("EO").

24.   At all times mentioned herein, Plaintiff met and/or exceeded Defendant's legitimate

job expectations.

**COUNT I**
**RACIAL DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e,** *et seq.*

25.   Plaintiff hereby re-alleges paragraphs 1 through 24 of this Complaint as though fully

set forth herein.

26.   Plaintiff was qualified and satisfactorily performing his duties as a Police

Officer/Patrol Officer.

27.   That Defendant carried out the aforementioned acts of discrimination against Plaintiff

on the basis of his race (African-American) – a protected class under Title VII.

28.   That the aforementioned acts constitute unlawful practices pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

29.   That the effect of the practices complained of above was to deprive Plaintiff of equal

employment opportunities and otherwise adversely affect his status as an employee

because of his race (African-American).

30.   That the unlawful employment practices complained of above were intentional.

31.   That similarly-situated employees outside the protected class, including, but not

limited to, Kara Arbogast (Caucasian), Police Officer/Patrol Officer, were not

subjected to the same or similar severe adverse employment actions that Plaintiff endured, including, but not limited to, being terminated from employment, despite their having engaged in misconduct by, among other things, showing their work badge while off duty during the "National Police Week" event on or about May 13, 2017. Furthermore, Ms. Arbogast was also not the victim of any racially-tainted comments.

32.    That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

33.    That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**RETALIATION**
**(Adverse Actions, Protected Activity Deterrents, and Termination)**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e,** *et seq.*

34.    Plaintiff hereby restates and incorporates paragraphs 1 through 24 of this Complaint as though fully set forth herein.

35.    Soon after November 15, 2017, Plaintiff submitted a written statement to Mr. Lasick, protesting against Mr. Shull having said to Plaintiff, "Now I'm as dark as you."

36.    On or about November 29, 2017, Plaintiff met with Mr. Lacick, Mr. Fuller, and Mr. Shull, and objected to unlawful employment practices.

37.    The aforementioned complaints constitute "legally protected activities" under Title VII.

38.     The aforementioned legally protected activities were known by management to have occurred.

39.     The subsequent termination from employment amounted to illegal retaliation.

40.     That the aforementioned act of retaliation (termination) for complaining of discrimination and hostile work environment constitutes an unlawful employment practice pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

41.     That the effect of the employment termination complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee based upon his legally protected activities.

42.     That the unlawful employment practices complained above were intentional.

43.     That the retaliatory employment practices described above have caused and will continue to cause Plaintiff to suffer lost earning capacity, severe emotional distress, humiliation, and mental anguish.

44.     That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

45.     As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost future earnings capacity, emotional distress, attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT III**
**HOSTILE WORK ENVIRONMENT**
**(Race)**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42  U.S.C. § 2000e,** *et seq.*

46.     Plaintiff hereby restates and incorporates paragraphs 1 through 24 of this Complaint
        as though fully set forth herein.

47.     On or about November 15, 2017, Mr. Shull changed a tire for an employee thereby
        resulting in his (Mr. Shull's) hands getting dirty, and subsequently stated to Plaintiff,
        "Now I'm as dark as you." Plaintiff found the comment to be extremely offensive.

48.     On or about November 29, 2017, Mr. Shull admitted to stating to Plaintiff, "Now I'm
        as dark as you." Mr. Lasick and Mr. Fuller witnessed said admission.

49.     Mr. Shull further stated, "I joke like that, you can ask my other black friends." Mr.
        Fuller and Mr. Lasick witnessed Mr. Shull's comment. Plaintiff found Mr. Shull's
        reference to "other black friends" to be extremely offensive.

50.     That the aforementioned acts constitute unlawful practices pursuant to Title VII.

51.     That the effect of the practices complained of above was to deprive Plaintiff of equal
        employment opportunities and otherwise adversely affect his status as an employee
        because of his race.

52.     That the unlawful employment practices complained of above were intentional,
        unwelcome, and personally hostile and offensive to Plaintiff.

53.     That the aforementioned conduct of the Defendant and its supervisory employees was
        sufficiently severe and/or pervasive so as to alter the terms and conditions of
        Plaintiff's employment and to create an intimidating, hostile, and offensive working
        environment for Plaintiff.

54.   That the aforementioned conduct of the Defendant, as set forth above, has caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish.

55.   That the aforementioned conduct of the Defendant and its supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

56.   That Defendant knew or should have known of the aforementioned conduct of its supervisory employees against Plaintiff and failed to take prompt corrective action.

57.   That Defendant is vicariously liable for the conduct of its employees carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Michael Jacobs, Plaintiff, demands judgment against Defendant, James N. Mattis, Secretary, Department of Defense as follows:

a.   Compensatory damages of $300,000.00;

b.   Back pay and interest on same;

c.   Prejudgment and post judgment interest;

d.   Award attorney's fees and costs, including expert witness fees, as allowed by law;

e.   Clean Personnel Record;

f.   And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

_____/s/_____
Paul V. Bennett, Esq. (DC Bar No. 427358)
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
(410) 974-6000
(410) 224-4590 Fax
pbennett@belawpc.com

*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Michael Jacobs, Plaintiff, hereby demands that this matter be tried by jury.

_____ /s/_____
Paul V. Bennett, Esq. (DC Bar No. 427358)